# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| PAUL BRADLEY LEGG,<br><br>Plaintiff,<br><br>vs.<br><br>RICKY McCARTER, *et al.*,<br><br>Defendants. | CIVIL NO. 17-00511 DKW-KJM<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND; AND (3) DENYING AS MOOT ALL PENDING MOTIONS** |

## INTRODUCTION

On October 11, 2017, Plaintiff Paul Bradley Legg, proceeding pro se, filed several documents, which the Court liberally construed as a Complaint, alleging fraud and numerous other grievances against several individuals and entities due to the "seizure" of certain real property. *See* Compl., Dkt. No. 1-1. On October 11, 2017, the district court issued a deficiency order, directing Legg to either pay the applicable filing fee or to submit a completed *in forma pauperis* application within twenty-eight days. Dkt. No. 3. On November 6, 2017, Legg filed an Application to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 4. The Court GRANTS the IFP Application. However, because Legg fails to state a claim, several defendants are immune from suit, and the Court is without subject matter

jurisdiction, the Court DISMISSES the Complaint and GRANTS Legg limited leave to file an amended complaint in accordance with the terms of this order by December 15, 2017. The Court also DENIES as moot Legg's Motion for Leave to Amend and Motion for Service by the United States Marshal, as discussed more fully below.[1]

## DISCUSSION

Because Legg is proceeding pro se, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) ("The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants.") (citing *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam)). The Court recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

### I. Plaintiff's IFP Application Is Granted

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that

---

[1] Pursuant to Local Rule 7.2(d), the Court finds these matters suitable for disposition without a hearing.

demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). "An affidavit in support of an IFP application is sufficient where it alleges that the affiant cannot pay the court costs and still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015) (citing *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948)); *see also United States v. McQuade*, 647 F.2d 938, 940 (9th Cir. 1981) (The affidavit must "state the facts as to affiant's poverty with some particularity, definiteness and certainty.") (internal quotation omitted).

When reviewing an application filed pursuant to § 1915(a), "[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty." *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004). While Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins*, 335 U.S. at 339, the applicant must nonetheless show that he is "unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a).

Here, the IFP Application indicates that Legg receives SSI benefits in the amount of $756 per month, but lists no other funds available, such as in cash or in a checking or savings account. Based upon the IFP Application, Legg's income falls below the poverty threshold identified by the Department of Health and Human Services ("HHS") 2017 Poverty Guidelines. *See* 2017 HHS Poverty Guidelines, *available at* https://www.federalregister.gov/documents/2017/01/31/2017–

02076/annual-update-of-the-hhs-poverty-guidelines. Accordingly, the Court finds that Legg has made the required showing under Section 1915 to proceed without prepayment of fees, and GRANTS his IFP Application.

## II. Plaintiff's Complaint Is Dismissed With Limited Leave to Amend

Upon review of the Complaint, the Court finds that Legg fails to state a claim upon which relief may be granted or to establish this Court's subject matter jurisdiction. As discussed below, even liberally construed, the Complaint fails to state any basis for judicial relief against any party.

### A. Standard of Review

The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous, malicious, failing to state a claim upon which relief may be granted, or seeking monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (stating that 28 U.S.C. § 1915(e) "not only permits but requires" the court to *sua sponte* dismiss an *in forma pauperis* complaint that fails to state a claim); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001) (per curiam) (holding that "the provisions of 28 U.S.C. § 1915(e)(2)(B) are not limited to prisoners"). Because Legg is appearing pro se, the Court liberally construes the Complaint.

4

The Court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted[.]" A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). A plaintiff must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008). This tenet—that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555; *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the Court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8. *Id.* at 679.

**B.     The Complaint Fails To State A Claim For Relief**

Based on the Court's preliminary screening, it appears that Legg seeks to allege fraud claims under state law and violations of his federal rights against what appear to be a United States Trustee involved in a bankruptcy proceeding, state court judges, private attorneys, realtors, and other individuals involved in the conveyance of real property in which he claims an interest. Even given a liberal construction, the allegations in the Complaint fail to state a claim against any defendant. As to each claim, the Complaint fails to provide sufficient factual content to enable the Court to draw the reasonable inference that any defendant is liable for the misconduct alleged, or, that certain defendants are even amenable to suit. In short, even accepting the truth of the factual allegations, the Complaint fails to state a claim to relief that is plausible on its face.

Legg initiated this civil action by mailing a thirteen-page letter, addressed to the Chief United States District Judge, stating—

> I write to you on the private side, as a non citizen American State National, of age of the majority, in a diplomatic capacity, a complaint, under the protection of the U.S. Constitution (1787)

6

to report to you the fraud(s) and other crimes involved in Bankruptcy case 08-210, by the Trustee, Mr. David Farmer, (a US citizen) and seek your help as the Chief Administrator, in your Fiduciary capacity, to reopen the case, and return the assets "property-4" (identified below) unlawfully, seized from my estate.

I also seek "Relief from Third Circuit Court" "judgments and Orders" as non-citizen American State National with 11th Amendment immunity, "judgments and Orders" made without jurisdiction or contract, return all property seized by the Hawaii State Judiciary including 2- homes and a 11.06 acre parcel of land (as identified below), and remove those occupying my properties, and return the properties to me, in their pristine condition (per the Libor Code), as per my rights guaranteed by the U.S. Constitution (circa 1787).

\* \* \* \*

Property 1–My property [was] 1st fraudulently conveyed by the Trustee Farmer during the [bankruptcy] case 08-00210, the fraud being admitted by David Farmer and Timothy G. Hogan, and Christopher J. Muzzi, in a private negative averment documented with a certificate of Non-Response by Notary. That property having been, Re conveyed to me, thru private agreements, and private power of sale to me in 2015. The private registered bonded deed of that property. Ronald Ibarra, with Carlsmith and Ball Attorneys Triantos, Haitsuka, Odell, in a false hearing with fraudulent paper work, used to "expunge" my deed in the [Bureau of Conveyances]. Case # 3CC16100027K. [Circuit Court Judge] Ronald Ibarra, and Robert Triantos, Edmund Haitsuka of Carlsmith Ball . . . have brought fraud on the Court through personage, lack of due process, initiating a false arrest, and perjury.

Compl. at 1. Legg further alleges, with respect to a second parcel, that—

My property [is] . . . currently being unlawfully seized w/o jurisdiction by the administrator of the Third Circuit Court case #

7

> CC15100236K. As a non-citizen American State National (with full Constitutional (1787) immunity), the Hawaii Judiciary Third Circuit Court a foreign Corporation never had jurisdiction over my ESTATE or its property, as the debtor was surrendered to the U.S. Secretary of Treasury, and an Indemnity Bond issued. This is a complete violation of the Services Contract for American Nationals between the Federal Government as enumerated in the U.S. Constitution (circa 1787), as well as violations of the Federal Laws: RICO Statutes, and 18 U.S.C. 241 and 242 (as applied to U.S. citizens). Administrating U.S. Law in a foreign occupied Nation, is a war crime, in violation to the treaty of Hague, the Geneva Convention as published in the U.S. Army field manual.

Compl. at 2. Legg alleges similar claims against these parties with respect to a third parcel, "unlawfully seized by Judge Ibarra," and other "assets and estate [that were] removed from [a] slush pile of assets involved in the U.S.A. Inc. Bankruptcy reorganization[.]" Compl. at 3.

Legg seeks, *inter alia*, the following specific forms of relief: the return of "all assets unlawfully obtained to [him] and [his] Estate," the appointment of a "'private Trustee' to Negotiate with any Justice dept. representatives to bring about settlement of all claims," order the "U.S. Marshals Office [to effectuate] removal and ejectment, of Ricky and Momi McCarter . . . from my property, a house they are living in, and locking me out of, under permissions granted by BAR members," and "have all Third Circuit Court 'Orders' issued by Ronald Ibarra, and any other Administrators, against my common law trademarked tradenames . . . or ESTATE properties declared 'void' for lack of jurisdiction[.]" Compl. at 3–5; *see also*

Compl. at 10–11 (requesting the "reopening of the case 08-00210" and "unspecified damages").

The Complaint suffers from several deficiencies. First, the Complaint does not comply with Rule 8, which mandates that a complaint include a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). A complaint that is so confusing that its "'true substance, if any, is well disguised'" may be dismissed *sua sponte* for failure to satisfy Rule 8. *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008) (quoting *Gillibeau v. City of Richmond*, 417 F.2d 426, 431 (9th Cir. 1969)); *see also McHenry v. Renne*, 84 F.3d 1172, 1178-80 (9th Cir. 1996) (affirming dismissal of complaint where "one cannot determine from the complaint who is being sued, for what relief, and on what theory, with enough detail to guide discovery"). Legg does not clearly identify in any coherent or organized manner the separate causes of action that he is asserting, nor provide specific factual allegations to support his legal conclusions. Even applying the most liberal pleading standard, the Court cannot discern from the Complaint the conduct on which any claim is based.

Second, the Court may not "re-open" any terminated bankruptcy proceeding involving Legg or his "Estate" in the manner requested. *Snipes v. Hacker*, 2011 WL 13196551, at *2 (D. Haw. Oct. 25, 2011) (denying relief and terminating case in

9

which plaintiff sought reconsideration of Texas bankruptcy action, and holding that plaintiff's "right to relief, if any, rested with the Texas Bankruptcy Court, the Texas District Court, and the Fifth Circuit Court of Appeals") (citing *Adams v. U.S. Attorney's Office*, 2011 WL 3359555, at *1 (D. D.C. Aug. 3, 2011) ("As a general rule applicable here, a federal district court lacks subject matter jurisdiction to review the decisions of another federal court.")).[2]  Further, to the extent he attacks final state court judgments, including the allegedly "void" Third Circuit Court judgments, his claims are presumptively barred by the *Rooker-Feldman* doctrine.[3]

---

[2]To the extent Legg collaterally attacks any federal court judgments as rendered "without jurisdiction," his attempts are barred by the doctrine of *res judicata*.  *See, e.g.*, *Marshall v. Washington State Bar Ass'n*, 2012 WL 1884680, at *10 (W.D. Wash. May 23, 2012), *aff'd*, 523 Fed. Appx. 451 (9th Cir. 2013) ("*Res judicata* also bars plaintiffs from recasting their claims under a different theory so that they may sue again.") (citing *Feminist Women's Health Ctr. v. Codispoti*, 63 F.3d 863, 867 (9th Cir. 1995)).  Even assuming the truth of Legg's allegations that any prior judgments were entered by courts without jurisdiction, the Court is unpersuaded that it should now re-open those cases in this independent proceeding.  *See* 18A Wright & Miller, Fed. Prac. & Proc. § 4428 (2d ed.) ("Today, it is safe to conclude that most federal-court judgments are *res judicata* notwithstanding a lack of subject-matter jurisdiction.").

[3]Under the *Rooker-Feldman* doctrine (*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), collectively referred to as *Rooker-Feldman*), "'a losing party in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'"  *Bennett v. Yoshina,* 140 F.3d 1218, 1223 (9th Cir. 1998) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).  The *Rooker-Feldman* doctrine divests federal district courts of jurisdiction to conduct direct reviews of state court judgments even when a federal question is presented.  Although not entirely clear, to the extent Plaintiff contests state court decisions, any such challenge must be made through the state court appellate process.  Legg may neither collaterally attack nor appeal such state court determinations to this Court in the manner set forth in his Complaint.

Relatedly, his claims against the presiding state court judges for conduct undertaken in their judicial capacities are barred by the doctrine of absolute judicial immunity.[4]

Third, to the extent he alleges violations of his federal constitutional rights, Legg fails to state a Section 1983 claim.[5] In order to state a claim under Section 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). He alleges neither.[6] Although pro se pleadings are liberally construed, a plaintiff must allege that he or she suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of that

---

[4]*See Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("This immunity applies even when the judge is accused of acting maliciously and corruptly, and it is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences."). Moreover, any vaguely alleged claims against unnamed court "administrators" acting in concert with the judges are similarly barred by the doctrine of absolute quasi-judicial immunity. *See Mullis v. United States Bankruptcy Court for the District of Nevada*, 828 F.2d 1385 (9th Cir. 1987).

[5]Under 42 U.S.C. § 1983,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

[6]He does not specify any right that was allegedly violated, other than his general averment that his rights were violated pursuant to the United States "Constitution (circa 1787)." Legg also fails to allege how, or even if, any of the defendants he names acted under color of state law. As discussed elsewhere, his claims against the state court judges are barred by the doctrine of absolute judicial immunity.

defendant, which the instant Complaint fails to do. *See Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976). Accordingly, Legg's Section 1983 claims must be dismissed.

To the extent Legg seeks to allege a civil RICO claim, he fails to do so.[7] Moreover, to the extent he seeks to pursue criminal charges against any party, he likewise fails to state a claim.[8]

Because Legg fails to state a plausible claim for relief, the Complaint is dismissed. Because amendment *may* be possible, dismissal is with leave to amend, as further described below.

---

[7]To allege a federal racketeering claim, Legg must establish: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally must establish that (5) the defendant caused injury to plaintiff's business or property." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002) (citing 18 U.S.C. §§ 1962(c), 1964(c)); *see also* 18 U.S.C. § 1961. The Complaint does not sufficiently plead any of these elements. Legg does not identify the predicate acts that form the basis of the alleged "scheme of racketeering." *See Graf v. Peoples*, 2008 WL 4189657, at *6 (C.D. Cal. Sept. 4, 2008) ("Plaintiff does not expressly identify any RICO predicate acts, but simply incorporates his previous allegations. Such 'shotgun' pleading is insufficient to plead a RICO claim.") (citing *Savage v. Council on American–Islamic Relations, Inc.*, 2008 WL 2951281, at *14 (N.D. Cal. July 25, 2008) (finding that a RICO claim was insufficient where plaintiff set forth a "redundant narrative of allegations and conclusions of law, but [made] no attempt to allege what facts are material to his claims under the RICO statute, or what facts are used to support what claims under particular subsections of RICO"); and *Federal Reserve Bank of San Francisco v. HK Systems*, 1997 WL 227955, at *3 (N.D. Cal. Apr. 24, 1997) (finding that a complaint was insufficient for failure to "identify exactly which acts are 'predicate acts' for RICO liability")).

[8]No private right of action exists to enforce criminal statutes, and private individuals such as Plaintiff, have no authority to issue a criminal indictment for violation of unspecified violations of the criminal code, 18 U.S.C. § 241, or any other criminal statute. A civil action is not the proper mechanism to allege criminal conduct. *See Kumar v. Naiman*, 2016 WL 397596, at *2 (E.D. Cal. Feb. 2, 2016) ("[P]laintiffs, as private citizens, have no standing to prosecute criminal claims."). To be clear, the Court does not have jurisdiction to hear allegations of criminal conduct that are brought by anyone other than the United States. *See, e.g., United States v. Nixon*, 418 U.S. 683, 693 (1974) (noting that the executive branch has exclusive authority to decide whether to prosecute a case).

## C. Subject Matter Jurisdiction Is Lacking

Claims may also be dismissed *sua sponte* where the Court does not have federal subject matter jurisdiction. *Franklin v. Murphy*, 745 F.2d 1221, 1227 n.6 (9th Cir. 1984); *see also* Fed. R. Civ. P. 12(h)(3); *Grupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 593 (2004) ("[I]t is the obligation of both the district court and counsel to be alert to jurisdictional requirements."). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *See Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). "Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). At the pleading stage, a plaintiff must allege sufficient facts to show a proper basis for the Court to assert subject matter jurisdiction over the action. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006); Fed. R. Civ. P. 8(a)(1).

In general, a plaintiff may establish subject matter jurisdiction in one of two ways. First, he may assert federal question jurisdiction based on allegations that a defendant violated the Constitution, a federal law, or treaty of the United States. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil

actions arising under the Constitution, laws, or treaties of the United States."). The United States Supreme Court has recognized that a "plaintiff properly invokes § 1331 jurisdiction" by pleading "a colorable claim 'arising' under the Constitution or laws of the United States." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 (2006). Second, a plaintiff may invoke the court's diversity jurisdiction, which applies "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In order to establish diversity jurisdiction, a plaintiff must establish complete diversity of the parties. *See Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (explaining that § 1332(a) "requires complete diversity of citizenship; each of the plaintiffs must be a citizen of a different state than each of the defendants").

Legg fails to establish either diversity or federal question jurisdiction. First, although he does not allege the citizenship of any party for purposes of Section 1332(a), it appears that all parties are citizens of Hawaiʻi. Next, his haphazard references to the United States Constitution, statutes and various international treaties are not sufficient to create federal question jurisdiction. Any such cause of action is "so patently without merit as to justify the court's dismissal for want of jurisdiction." *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 70 (1978); *Avila v. Pappas*, 591 F.3d 552, 553 (7th Cir. 2010) ("It is not

14

enough to utter the word 'Constitution' and then present a claim that rests on state law. If it were, every claim that a state employee committed a tort, or broke a contract, could be litigated in federal court. It is therefore essential that the federal claim have some substance—that it be more than a pretext to evade the rule that citizens of a single state must litigate their state-law disputes in state court.").

Legg's grievances sounding in tort (*e.g.*, fraud, conversion, false arrest, and personage, among others) are state law claims that may be appropriately brought in Hawaii state courts. These claims may not, however, be brought in federal court, absent a clearly-pled basis for federal jurisdiction. *See Thompson*, 99 F.3d at 353 ("A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction."). Accordingly, the Court is without the authority to adjudicate these claims, and the Complaint is dismissed with leave to amend, as detailed below.

### III. The Remaining Motions Are Denied As Moot

In a November 6, 2017 letter addressed to the Clerk of Court, Legg requests leave to file an amended complaint and a Court order that service be made, "per [Federal Rule of Civil Procedure] 4(c)(3) [by] the U.S. Marshals office or 'someone specially appointed by the court.'" Dkt. No. 5. The Court liberally construes the letter as both a Motion for Leave to Amend and a Motion for Service.

15

Because the Court has dismissed Legg's original Complaint and granted leave to amend in accordance with the terms of this order, his Motion for Leave to Amend is denied as moot.

In light of the absence of a pending complaint, the Court likewise denies as moot Legg's Motion for Service. In the event that Legg files an amended complaint in accordance with this order, the Court will revisit his request for service by the U.S. Marshal, as needed.

## IV. <u>Leave To Amend</u>

The dismissal of the Complaint is without prejudice, and Legg is granted leave to amend to attempt to cure the deficiencies identified above. If Legg chooses to file an amended complaint, he must write short, plain statements telling the Court: (1) the specific basis of this Court's jurisdiction; (2) the constitutional or statutory right Plaintiff believes was violated; (3) the name of the defendant who violated that right; (4) exactly what that defendant did or failed to do; (5) how the action or inaction of that defendant is connected to the violation of Plaintiff's rights; and (6) what specific injury Plaintiff suffered because of that defendant's conduct. Plaintiff must repeat this process for each person or entity that he names as a defendant. If Legg fails to affirmatively link the conduct of each named defendant with the specific injury he suffered, the allegation against that defendant will be dismissed for failure to state a claim.

An amended complaint generally supersedes a prior complaint, and must be complete in itself without reference to the prior superseded pleading. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), *overruled in part by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (en banc). Claims dismissed without prejudice that are not re-alleged in an amended complaint may be deemed voluntarily dismissed. *See Lacey*, 693 F.3d at 928 (stating that claims dismissed with prejudice need not be realleged in an amended complaint to preserve them for appeal, but claims that are voluntarily dismissed are considered waived if they are not re-pled).

The amended complaint must designate that it is the "First Amended Complaint" and may not incorporate any part of the original Complaint. Rather, any specific allegations must be retyped or rewritten in their entirety. Legg may include only one claim per count. Failure to file an amended complaint by **December 15, 2017** will result in the automatic dismissal of this action without prejudice.

## **CONCLUSION**

Based upon the foregoing, the Complaint is DISMISSED with leave to amend (Dkt. No. 1), the IFP Application is GRANTED (Dkt. No. 4), and both the Motion for Leave to Amend and the Motion for Service are DENIED as moot (Dkt. No. 5).

Legg is granted limited leave to file an amended complaint in accordance with the terms of this order by **December 15, 2017**. The Court CAUTIONS Legg that

failure to file an amended complaint by **December 15, 2017** will result in the automatic dismissal of this action without prejudice.

IT IS SO ORDERED.

Dated: November 13, 2017 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Legg v. McCarter, et al.*, Civil No. 17-00511 DKW-KJM; **ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; (2) DISMISSING COMPLAINT WITH LEAVE TO AMEND; AND (3) DENYING AS MOOT ALL PENDING MOTIONS**